ABNER CARROLL v. THE STATE.

No. 2994.   Decided April 26, 1905.

1.—Burglary—Reasonable Doubt.

Where in a trial for burglary the court, although not applying the doctrine of reasonable doubt to each particular phase of the testimony, instructs the jury fully with reference to reasonable doubt and presumption of innocence in the portions of his charge following that in which this was not done, it is sufficient and not such error, if error at all, which requires a reversal.

2.—Same—Fact Case.

See opinion for evidence held sufficient to sustain a conviction of burglary.

Appeal from the District Court of Washington.   Tried below before Hon. E. R. Sinks.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Mathis & Pace,* for appellant.—We submit that the defendant should have had the benefit of a reasonable doubt on each of the three propositions of defense covered in this one charge—the only charge on the theory of the defense given by the court; and we believe that the court erred in failing to incorporate in said charge, a specific charge on reasonable doubt.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The trial resulted in appellant's conviction for burglary.   The court charged the jury in reference to appellant's defensive theory as follows: "If you believe from the evidence that the defendant did enter the house described in the indictment, but that such entry was made through an open door, or if you believe from the evidence that the defendant did by 'breaking' as that term is above defined, enter said house with the intent to have carnal intercourse with Flora Judson, then in either case you will acquit the defendant." This portion of the charge is criticised because it omits to instruct the jury directly in this connection in regard to the reasonable doubt.   In the following portion of the charge the court instructs fully with reference to reasonable doubt and presumption of innocence. Usually, it is sufficient if the charge on reasonable doubt is given without applying it pertinently to each particular phase of the testimony. We do not believe it is such error, if error at all, as would require a reversal of the judgment, that reasonable doubt was omitted from the extract of the charge above quoted:   Edin's case v. State, 41 Texas Crim. Rep., 522; Huell v. State, 80 S. W. Rep., 380.   The theory of appellant was that he went into the house, not for the purpose of committing theft as charged, but for the purpose of visiting the woman

Flora Judson, and that in doing so he went through an open door. There was testimony showing that one of the windows of the house was raised, and the entry made at that point. The court instructed the jury if defendant went through an open door, or through this window after raising it, for the purpose of visiting the woman Flora Judson he would not be guilty. We think this a sufficient presentation, in connection with the general charge on reasonable doubt, of the law on the issue made by this testimony.

The only other insistence is that the evidence does not justify the conviction. The State's case is that the entire house was closed, windows down and doors shut, prior to appellant being found in the house, and that some one entered the house by raising the window in the dining room. Appellant was found in the house about 12 o'clock, by witness Eldridge, a "bus-driver" of the Exchange Hotel—the house burglarized. It was the duty of this witness to drive the "bus" to the depot to meet passengers on trains. He had gotten on his bus with the view of going to the depot, discovered his hitch rein was gone, got down, went to the office of the hotel, through the door into the dining room and on through to the wash room to get the hitch rein or rope. Just as he reached the back door of the dining room on the right, the cook's room being on the left next to the dining room, the kitchen at the north end of this hall, the door opening from the north end of the hallway into the kitchen, he saw some one run out of the kitchen into the hallway, and then on into the wash room. This frightened witness, and he demanded who it was. Receiving no reply, he again made the demand. Again receiving no reply, he halloaed to the night clerk to "bring a gun." When this occurred appellant came out of the wash room, and said, "Hush, don't say anything about this; I don't want Mr. Augustine to know I am in here." "I said, 'What are you doing in here?' And he said he came after Flora for Fox Stringfellow. I said: 'It is not true, for Fox Stringfellow has gone home long ago;' and I told him he had to go into the office with me. I took him on to the office and on out doors. Defendant was not at Flora Judson's room. He was not at Flora Judson's door. He was not in the hall that leads to Flora Judson's room. He had gone past the door to the hall that leads into the door of Flora Judson's room, and had gone into the kitchen when witness saw him run out of the kitchen and into the wash room. It seems there had been some property taken out of the kitchen several times prior to the occasion mentioned, once about two weeks before this transaction. Appellant's theory was that he had gone through the front hall door, along the hallway and down the flight of steps into the rear end of the hall, and was at Flora Judson's room door when Eldridge approached, which frightened him, and he ran into the wash room. That when he finally came out at the suggestion of Eldridge and made himself known, he informed Eldridge of his mission and his failure to arouse Flora Judson when he knocked on her door. Eldridge informed him she was in there, and advised him to knock

again, which he did, but failing to arouse her he went with Eldridge out to the front through the office. Without going farther into the details of it, we think this statement shows two theories, one that appellant was guilty of burglary with intent to steal, and the other would discredit that idea, and if believed by the jury would entitle appellant to an acquittal. The jury solved these facts against his theory, and in favor of the State's case. We do not believe this court would be justified in setting aside the verdict of the jury on the facts. The judgment is therefore affirmed.

*Affirmed.*